IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICIA MAYER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDWEST PHYSICIAN ADMINISTRATIVE SERVICES, LLC d/b/a DULY HEALTH AND CARE<br><br>Defendant. | NO. 23 CV 3132<br><br>(Removal from: the Circuit Court of Cook County, Illinois, Case No. 2023CH03446, Chancery Division)<br><br>Jury Trial Demanded |

## NOTICE OF REMOVAL

Defendant Midwest Physician Administrative Services, LLC d/b/a Duly Health and Care (Duly) hereby removes this putative class action to federal court pursuant to the federal officer removal statute, codified at 28 U.S.C. § 1442(a)(1), and the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d). In support, Duly provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (same).

## NATURE OF THE CASE

1. This case is one of numerous similar website privacy cases that have been filed against healthcare providers throughout the nation, including in this Court. *Kurowski, et al. v. Rush System for Health*, Case No. 1:22-cv-05380 (N.D. Ill. Sept. 30, 2022); *Michael Krackenberger v. Northwestern Memorial Hospital, et al.*, Case No. 4:22-cv-04203 (N.D. Ill., Aug. 10, 2022).

2. Named plaintiff Patricia Mayer filed her putative Class Action Complaint against Duly in the Circuit Court of Cook County, Illinois, Case No. 2023CH03446, Chancery Division

on April 10, 2023. (*See* Ex. A, Chancery Court Dckt., Compl., filed April 10, 2023.) Mayer served Duly with a copy of the complaint on April 20, 2023. (*Id.*, Service of Summons.)

3. The underlying factual basis for Mayer's complaint is that Duly allegedly violated Illinois law by embedding certain third-party source code, called the Meta Pixel, onto Duly's publicly available websites, referred to in the complaint as the "Web Properties." (Ex. A, Compl. ¶¶ 7-8, 11-14.)

4. The web properties identified by plaintiff include Duly's MyChart patient portal, referred to in the complaint as the "Portal." (*Id.*, ¶ 9.)

5. Mayer also alleges, upon information and belief only, that Duly allegedly violated Illinois law by installing and implementing "Facebook's Conversions Application Programming Interface" (CAPI) technology on Duly's website servers. (*See id.*, ¶ 16.)

6. Mayer alleges that these "tracking tools" are "snippets of code that tracks users as they navigate the website, logging which pages they visit, which buttons they click and certain information they enter into forms." (*Id.*, ¶¶ 42-43.)

7. Mayer further alleges that Duly "installed its Pixel and CAPI to disclose and transmit to third parties Plaintiff's and other Class Members' communications with Defendant including Private Information and the contents of such information." (*Id.*, ¶ 268.)

8. Based on these facts, Mayer's complaint contains seven counts against Duly under Illinois law: (1) alleged violation of Illinois Eavesdropping Statute (*id.*, ¶¶ 217-242); (2) alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (*id.*, ¶¶ 232-252), and (3) the Uniform Deceptive Trade Practices Act, (*id.*, ¶¶ 253-265); and common law claims for (4) breach of confidence (*id.*, ¶¶ 266-272), (5) invasion of privacy (*id.*, ¶¶ 273-

285), (6) invasion of privacy – intrusion upon seclusion (*id.*, ¶¶ 286-296); and (7) breach of implied contract (*id.*, ¶¶ 297-303).

9. Mayer seeks to represent a putative "Nationwide Class" in pursuing these claims, defined as follows: "All individuals residing in the State of Illinois whose Private Information was disclosed to a third party without authorization or consent through the Pixel on Defendant's Web Properties." (*Id.*, ¶ 212; *see also id.*, ¶ 215 (alleging "The Nationwide Class Members are so numerous that joining all members is impracticable").)

## BASIS FOR REMOVAL

I. **Removal is Proper Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).**

10. Duly first removes Mayer's complaint under the federal officer removal statute, codified at 28 U.S.C. § 1442(a). Under that statute, a civil action that is "against or directed to" any of the following may be removed to federal court: "(1) the United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency therefore, in an office or individual capacity, *for or relating to any act under color of such office . . . .*" *Id.* § 1442(a)(1) (emphasis added).

11. To remove under the statute, Duly must show that it: "(1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018) (citing *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 689-690 (7th Cir. 2016)).

A. *Duly is a "Person" within the meaning of the statute.*

12. Mayer alleges Duly is "an Illinois Limited Liability Company based in Downers Grove, Illinois." (Ex. A, Mayer Compl. ¶ 38.)

13. Duly is thus a person under the federal officer removal statute. *See, e.g., Betzner*, 910 F.3d at 1015 (holding that "[c]orporations are persons under § 1442(a)").

**B. *Duly acted under a federal officer.***

14. As detailed below, this case is properly removable under 28 U.S.C. § 1442(a)(1) because Duly acted under color of federal law in making the MyChart patient portal available to Duly's patients, and Mayer's claims are for or relating to that action taken under color of federal law.

15. The Duly website contains a direct link to the login page for the Duly MyChart patient portal login page, available at: https://www.dulyhealthandcare.com/, that is referred to in Mayer's complaint as the "Portal" web property:



16. Through this link, Duly patients, as well as their parents, guardians, wards, and caretakers, can log-in to their MyChart patient portal accounts, set forth below:

17. The Duly MyChart patient portal is a direct outgrowth of a federal government health information technology initiative, a key component of which was for health care providers to provide electronic access to their patient health records online.

18. This federal action officially began in 2004. At that time, and "to provide leadership for the development and nationwide implementation of an interoperable health information technology infrastructure to improve the quality and efficiency of health care," President George W. Bush established "the position of National Health Information Technology Coordinator." *See* Exec. Order 13335, at pg. 702 (Apr. 27, 2004), *Incentives for the Use of Health Information Technology and Establishing the Position of the National Health Information Technology Coordinator*, available at https://www.presidency.ucsb.edu/documents/executive-order-13335-incentives-for-the-use-health-information-technology-and.

19. In 2009, following the Executive's lead, Congress then codified the National Coordinator position through the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH Act), , *see* 123 Stat. 115, 230 (2009).

20. The HITECH Act further allocated billions of dollars for the health care system in order to adopt and meaningfully use certified health information technology. *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology)

21. The following year, the Department of Health and Human Services implemented this Congressional enactment through the "Meaningful Use Program" regulations. *See* Vol. 75 Fed. Reg., No. 144, pg. 44314 (Jul. 28, 2010).

22. In introducing the final regulations the Department of Health and Human Services stated: "Certified EHR technology used in a meaningful way is one piece of a broader HIT infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." *Id.*, 44321.

23. As stated above, and from its inception, one key cog in this federal health information technology initiative has been for health care providers to provide patients and their caretakes with access to their health information online. *See* TOMMY G. THOMPSON & DAVID J. BRAILER, MD, PHD, *The Decade of Health Information Technology: Delivering Consumer-centric and Information-rich Health Care*, at pg. e (July 21, 2004).

24. The Meaningful Use regulations mandated that participants provide their patients with the ability to "view, download, and transmit" their health information online. *See, e.g.,* 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) ("Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission."); *id.* at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are discharged from the inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge").

25. This federal governmental command came with a consequence: if health systems did not meet the Meaningful Use requirements, including with respect to the view, download and transmit requirements, they would not receive their full Medicare reimbursements.

26. Duly acted in response to this federal command by being one of the entities that made a patient portal available online to its patients (*e.g.,* Ex. A, Compl. ¶¶ 8-9, 50, 196-198, 207.), and thus also acted under color of federal law for purposes of 28 U.S.C. § 1442(a)(1).

27. The first two federal courts to analyze removal on these grounds agreed with this analysis. *See Doe, et al. v. UPMC*, 2020 WL 4381675, *7 (W. D. Pa. Jul.31, 2020), *interlocutory appeal denied*, 2020WL 5742685 (W.D. Pa. Sept. 25, 2020) ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct at issue in the Complaint."); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, *3 (N.D. Ohio Oct. 30, 2020), *appeal denied*, 2020 WL 7705713 (N.D. Ohio Dec. 14, 2020) (same).

28. Other federal courts have since disagreed, at least under the facts alleged in those complaints. *See, e.g., Doe v. BJC Health System*, 2023 WL 369427, at *4-5 (E.D. Mo. Jan. 10, 2023), *appeal pending* Case No. 23-1107 (8th Cir., filed Jan. 19, 2023); *Doe v. Hoag Memorial Presb. Hosp.*, 2023 WL 3197716, at *2-3 (C.D. Cal. May 2, 2023).

  **C. Mayer's Illinois state law claims seek to hold Duly liable for actions taken under color of federal law.**

29. The next requirement for federal officer removal is a causal nexus between Duly's actions taken under color of federal law and Mayer's claims. To meet this requirement, under the plain language of 28 U.S.C. § 1442(a)(1), Mayer's claims must only be either "for *or relating to*" Duly's actions taken under color of federal law. 28 U.S.C. § 1442(a)(1) (emphasis added).

30. This statutory language is met here, because the Duly MyChart patient portal forms a key component of Mayer's state law claims.

31.     As set forth above, the MyChart patient portal is one of the alleged "Web Properties" alleged in the complaint. (Ex. A, Compl. ¶ 9 ("The Website, the Portal and the App are referred to herein as the 'Web Properties.'").)

32.     Mayer specifically alleges that she has "accessed Defendant's Website and Portal on her mobile device and computer and used the Website and the Portal to look for providers, to arrange care and treatment, to make appointments, to check payment history and for other billings matters." (*Id.*, ¶ 50.)

33.     Mayer seeks to represent a putative class consisting of individuals whose information was allegedly "disclosed to a third party without authorization or consent through the Pixel on Defendant's *Web Properties*." (*Id.*, ¶ 212 (emphasis added).)

34.     Moreover, Mayer alleges that it is a privacy violation under Illinois law, including an alleged violation of the Illinois Eavesdropping Act, each time an individual clicks on Duly's MyChart patient portal link alone.

35.     Indeed, Mayer specifically alleges that her eavesdropping claim is based on the alleged disclosure of patient status in this manner: "[t]he private conversations . . . transmitted by Defendant to undisclosed third-parties included, but were not necessarily limited to, *Plaintiff and Class Members' communications concerning their patient status*." (*Id.*, ¶ 224, emphasis added; *see also id.*, ¶ 150 (claiming that "[e]ven the fact that an individual is receiving medical service, *i.e.*, is a patient of a particular entity, can be Protected Health Information").)

36.     For these reasons, Mayer's claims meet the statutory requirement of being "for or related to" Duly's actions taken under color of federal law.

### D. *Duly raises colorable federal defenses to plaintiff's claims.*

37. Finally, Duly has at least three colorable federal defenses to Mayer's claims:

38. *First*, Duly will argue that the specific information that is purportedly disclosed (i.e., IP addresses and other web metadata) are outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the scope of the federal HIPAA regulations generally, contrary to Mayer's extensive allegations on this point. (Ex. A, Compl. ¶¶ 30-32, 137-155.)

39. This defense not only turns on an interpretation of federal law, but also forms part of the alleged duty for Mayer's Illinois state law claims (*e.g., id.*, ¶¶ 267-268), and is therefore sufficient to satisfy this element.

40. *Second*, Duly has a preemption defense to Mayer's Illinois state law claims. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines).

41. Under this precedent, a defendant cannot be held liable under state law for doing precisely what the federal government wants them to do—as applied here, not only making a patient portal available online to patients but also promoting the meaningful use of that portal. *See, e.g., Boggs v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").

42. *Third*, Duly will argue that the First Amendment is a defense to Mayer's claims. In *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Supreme Court held that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Id.* at 570 (emphasis added). Mayer's entire complaint challenges how Duly allegedly uses website analytical tools to enhance Duly's ability to speak to the public, including through the creation and dissemination of information. (*E.g.,* Compl. ¶¶ 121, 125-26.)

43. As the Supreme Court has also held, specific with respect to First Amendment protection on the internet: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1997)).

## II. Removal is Proper Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

44. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 14.

45. CAFA grants federal courts original jurisdiction over a class action when: (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," *id*. § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" not less than one hundred (100), *id.* § 1332(d)(5)(B); and (3) "the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs," *id.* § 1332(d)(2).

46. This lawsuit is a putative class action as Mayer seeks to represent a putative "Nationwide Class." (Ex. A, Compl. ¶¶ 212, 215.)

47. Mayer also filed the case in Illinois state court pursuant to a state rule of judicial procedure authorizing a class action. *See* 28 U.S.C. § 1332(d)(1)(B); *see also* 735 ILCS 5/2-801.

48. Venue in this Court is proper because the state court action is pending within the Northern District of Illinois.

### A. *The Parties are Diverse.*

49. Under CAFA, there is "minimal diversity" so long as "any member" of the proposed class of plaintiffs is either "a citizen of a State different from [the] defendant," or is "a citizen or subject of a foreign state and any defendant is a citizen of a State." 28 U.S.C. § 1332(d)(2)(A)-(B). Courts consider the citizenship of all putative class members—both named and unnamed. *See id.* § 1332(d)(1)(D). Courts determine citizenship of the members of the proposed class as of the date of filing of the complaint. *See id.* § 1332(d)(7).

50. Defendant Midwest Physician Administrative Services, LLC d/b/a Duly Health and Care (Duly) is a limited liability company that maintains its principal place of business in Illinois. (Ex. A, Compl. ¶ 38.) Duly's sole member is DMG Illinois Investments II LLC, and through its corporate lineage Duly is a citizen of Illinois, Delaware, Arizona, California, and Indiana for diversity purposes.

51. Mayer's proposed nationwide class is defined as "[a]ll *individuals residing in the State of Illinois* whose Private Information was disclosed to a third party without authorization or consent through the Pixel on Defendant's Web Properties." (Compl. ¶ 212 (emphasis added).)

52. Thus, a person who currently resides in Illinois and visited Duly's websites is within the plain language of the class definition—even if that Illinois resident is domiciled in

some other state. *See Myrick v. WellPoint, Inc.*, 764 F.3d 664, 665 (7th Cir. 2014) (holding plaintiff's putative class was not limited to Illinois citizens because it was defined as Illinois residents; "What's more, people who *said* they resided in Illinois might have meant something else; perhaps some who lived in Indiana but worked in Illinois bought RightCHOICE policies.")

53. For example, any college student or military personnel from any other state who accessed Duly's publicly available website, located at https://www.dulyhealthandcare.com/, would fall within the scope of the proposed putative class, even if they are not intending to reside in Illinois permanently. *See In re Spirit Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010) (plaintiffs' putative class of "all Kansas residents" was not limited to "all Kansas citizens" because the inference of citizenship was merely sensible guesswork; "There would have been no concern that out-of-state businesses, college students, soldiers, and the like comprised greater than one-third of the class, and it doesn't take any evidence to establish that Kansas citizens make up at least two-thirds of the members of a class that is open only to Kansas citizens.").

54. Accordingly, minimal diversity under CAFA exists. 28 U.S.C. § 1332(d)(2)(A).

B. *The Purported Class Consists of More than 100 Members*

55. Duly does not believe that Mayer has defined a proper class or that the class can be maintained under Rule 23. That said, the class as proposed meets CAFA's threshold requirement of at least one hundred putative class members. *See* 28 U.S.C. § 1332(d)(5)(B).

56. Indeed, Mayer's complaint alleges that the putative class consists of "hundreds of thousands (if not millions) of individuals." (Ex. A, Compl. ¶ 215.)

C. *The Complaint Places in Controversy a Sum Greater than $5 Million*

57. Accepting her allegations as true, and based solely on these allegations, Mayer's complaint also establishes CAFA's amount-in-controversy element. *See* 28 U.S.C. § 1332(d)(2).

58. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. Where, as here, a complaint does not specify a total amount sought, "the defendant's amount-in-controversy allegation should be accepted." *Id.* at 87.

59. CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S 588, 592 (2013).

60. Here, Mayer not only seeks to represent a massive putative nationwide class, she also seeks numerous different forms of monetary relief on those putative classwide claims: (1) "actual damages," (2) "compensatory damages," (3) "statutory damages," (4) "statutory penalties," as well as (5) "restitution and disgorgement of the revenues wrongfully retained," (6) "punitive damages," and "attorney's fees." (Ex. A, Compl., Prayer for Relief, at pg. 74.)

61. For each of her putative class claims, Mayer repeatedly alleges that the putative class is entitled to the following damages: "invasion of privacy," "lost time and opportunity costs with attempting to mitigate the actual consequences of the Pixel," "loss benefit of the bargain," "diminution in value of the Private Information," "statutory damages," and "the continued and ongoing risk to their Private Information." (*Id.*, ¶¶ 35, 208, 251, 272.)

62. Indeed, accepting Mayer's allegation that the putative class consists of "hundreds of thousands (if not millions) of individuals," Mayer's prayer for nominal damages alone on one of her counts (*id.*, ¶ 272(e)), could meet CAFA's jurisdictional amount.

63. Accordingly, Duly meets all requirements for removal under CAFA, and this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) as well.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

64. Duly satisfies all of the procedural requirements under 28 U.S.C. § 1446.

65. Duly was served on April 20, 2023 and is filing this notice of removal within thirty days of its receipt of the complaint by service pursuant to 28 U.S.C. § 1446. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

66. Duly files this notice of removal in the United States District Court of the Northern District of Illinois, because the State court in which the action is pending, the Circuit Court of Cook County, Illinois, is within this federal judicial district.

67. This removal notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

68. Duly has attached a copy of the state court pleadings that were filed in Cook County Chancery prior to removal as Exhibit A.

69. Upon filing this Notice of Removal, Duly will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Circuit Court of Cook County, Illinois.

## CONCLUSION

Mayer's complaint directly challenges practices and procedures Duly has taken acting under color of federal law and is therefore removable to this Court under 28 U.S.C. § 1442(a)(1). Removal is also appropriate under CAFA because Duly is an Illinois citizen, the putative nationwide class contains citizens of other States; the proposed class includes more than one hundred (100) members; and under Mayer's alleged theories the amount in controversy exceeds the value of $5,000,000.00. *See* 28 U.S.C. § 1332(d).

Dated: May 18, 2023

Respectfully submitted,

By: */s/* Bonnie Keane DelGobbo
*Counsel for Defendant Midwest Physician Administrative Services, LLC d/b/a Duly Health and Care*

David A. Carney
dcarney@bakerlaw.com
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 861-7634

Bonnie Keane DelGobbo
bdelgobbo@bakerlaw.com
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
Firm No. 46365

## CERTIFICATE OF SERVICE

I certify that on May 18, 2023, I filed the foregoing *Notice of Removal* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

> */s/ Bonnie DelGobbo*
> *One of the attorneys for Defendant Duly Health and Care*